Morton Steinhardt Cohen, a/k/a Morton Steinhardt v. Commissioner.
Cohen v. Commissioner
Docket No. 61002.
United States Tax Court
T.C. Memo 1957-110; 1957 Tax Ct. Memo LEXIS 128; 16 T.C.M. (CCH) 456; T.C.M. (RIA) 57110; June 28, 1957
*128 Held, that the term "home," as used in sections 62(2)(B) and 162(a)(2) of the 1954 Code which provide deductions for "away from home" expenses, means the taxpayer's principal place of business or employment. Held, further, that petitioner is not entitled to deduct, as "away from home" expenses, any of the expenses which he incurred in Detroit, where he stayed and was employed for an indefinite period. Held, further, that petitioner is not entitled to deduct certain automobile expenses, as "transportation expenses" under sections 62(2)(C) and 162(a) of the 1954 Code, because part of these constituted personal expenditures; and also because petitioner did not establish that any portion of the same which constituted business expenses was not covered by an expense allowance paid to him by his employer. Morton Steinhardt Cohen, 125 West 76th Street, New York, N. Y., pro se. Herbert Rothenberg, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined a deficiency in petitioner's income tax for the year 1954, in the amount of $694.35. The issues involved are: (1) Whether petitioner is entitled to deduct for the year 1954, the amount of $3,244.79 as "away from home" expenses "in the pursuit of a trade or business," within the meaning of sections 62(2)(B) and 162(a)(2) of the 1954 Code; [1] and (2) if the first issue is answered in the negative, whether petitioner is still entitled to deduct certain automobile expenses, *130 as "transportation expenses" incurred by him as an employee, under the provisions of section 62(2)(C) and 162(a) of said Code. *131 Findings of Fact Petitioner, Morton Steinhardt Cohen, is also known as Morton Steinhardt. His income tax return for the year 1954 was filed with the director of internal revenue for the Upper Manhattan district of New York. Petitioner was licensed as a certified public accountant in 1946; and he was familiar with the field of industrial management. Prior to October 1951, he held various jobs in New York and New Jersey as an accountant, industrial accountant, comptroller, assistant comptroller, and consultant. At all times material, he was unmarried, and had no dependents. Prior to October 1951, he lived with his parents at 125 West 76th Street, New York, New York. In October 1951, petitioner was hired as an assistant to the president of Kritch, New Jersey, Inc. of Newark, New Jersey; and, at that time, he rented an apartment in Union, New Jersey, but did not enter into a written lease. In November 1952, he terminated his employment with Kritch; but he retained the apartment in Union, New Jersey, until March 1953. During the period of November 1952 to March 1953, he negotiated for employment with Hygrade Food Products Corporation (hereinafter referred to as Hygrade); and these *132 negotiations took place at Hygrade's Newark, New Jersey, plant. In March 1953, petitioner obtained shortterm employment with Hygrade in its main executive offices in Detroit, Michigan, as a resident consultant. This employment terminated in July 1953. While so employed in Detroit, petitioner became socially acquainted with a fraternity brother, Sidney Winer. Winer operated a collection agency in Detroit, under the name of Creditors Service. Upon the termination of petitioner's employment with Hygrade in July 1953, he accepted a position with Creditors Service, subject to an understanding on the part of petitioner that such employment would mature into a partnership, if he and Winer maintained a mutually satisfactory relationship during the succeeding year. Petitioner intended to remain in Detroit permanently, if such a partnership arrangement were effected. But, by September 1954, it became obvious to petitioner that he was not going to attain partnership status; and he then terminated his employment with Creditors Service. Petitioner did not return to New York City until December 1954. From September 1954 to December 1954, petitioner remained in Detroit, attempting to get back *133 into the field of accounting and industrial management; and he had stationery printed with the following letterhead: "MORTON STEINHARDT "Industrial Engineer "Certified Public Accountant "600 Griswold Street "Detroit 26 - Woodward 1-7410, 125 West 76th Street, New York City - Endicott 2-2576" During his stay in Detroit from March 1953 to December 1954, petitioner purchased an automobile and obtained Michigan license plates; and he also collected Michigan unemployment compensation for the months of September, October, and November 1954. However, he lived in a hotel, and paid his rent on a weekly basis; he maintained bank accounts in New York City and Detroit; he renewed his New York driver's license when it expired in 1954; and he had his mail forwarded from the previously mentioned New York address, without having filed any change of address card with the New York post office. Petitioner made five airplane trips to New York during 1954. These trips were made partly for the purpose of obtaining business for Creditors Service, and partly to enable petitioner to maintain his contacts with professional associations which might aid him in finding employment. In his Federal *134 income tax return for 1954, petitioner reported total wages in the sum of $4,769, all of which was from his Detroit employment with Creditors Service; and he claimed a deduction of $3,244.79 for "away from home" expenses in Detroit, which were itemized as follows: Travel to and from New York and
Detroit
$ 303.03
Automobile Expenses: Gas, oil and lubrication
$291.00
Repairs and miscellaneous
308.41
Depreciation 1950
Dodge
$ 90
Depreciation 1954
Olds
665
755.00
1,354.41
Hotel and lodging
1,056.00
Food - meals
1,470.00
Laundry and cleaning
227.36
Miscellaneous other expenses
3.99
Total expenses
$4,414.79
Employers expense allowance
1,170.00
Net expense
$3,244.79 Respondent disallowed all of said "net expense." Of the above-mentioned automobile expenses, $73 represented parking fines and penalties. Petitioner's automobile was used in Detroit, at least in part, for personal matters, in the evenings, on weekends, and during the months when he was not employed by Creditors Service. The above-mentioned item of $1,170 represented an expense allowance paid to petitioner by Creditors Service, which was *135 not included by him in his gross income. Petitioner reported no income from any business in New York, during the year 1954. Also, he claimed no deduction for any New York business expense in 1954. As of January 1, 1955, he entered into a partnership with his father, in New York, to carry on a wholesale flour business. Petitioner's "home," within the meaning of sections 62(2)(B) and 162(a)(2) of the 1954 Code, was in Detroit during that portion of the year 1954 which preceded his return to New York City in December of said year. His employment in Detroit was for an indefinite period. The expenses deducted by petitioner on his 1954 return were all either personal expenses, or business expenses which were covered by the expense allowance paid to him by his employer. Opinion I. The first issue for consideration is whether petitioner is entitled to deduct for the year 1954, the amount of $3,244.79 as "away from home" expenses "in the pursuit of a trade or business," within the meaning of sections 62(2)(B) and 162(a)(2) of the 1954 Code. The determination of this issue depends upon where the "home" of the petitioner was located during said year. This Court and others have held *136 that the term "home," as used in section 23(a)(1)(A) of the 1939 Code (which is cognate to section 162(a) of the 1954 Code) means the taxpayer's principal place of business or employment. ; ; ; O'Toole v. Commissioner, - Fed (2d) - (C.A. 2, April 8, 1957), affirming per curiam a Memorandum Opinion of this Court [; . We hold that this definition is applicable also under sections 62(2)(B) and 162(a)(2) of the 1954 Code. The petitioner relies on , and . But we stated in , that the Coburn case was there distinguishable on the facts; and we here hold, likewise, that it is distinguishable on the facts. Also, in our opinion in the O'Hara case, we stated that the definition of "home" employed in the Wallace case, supra, did not accord with the views of this Court; and we still adhere to that position. The "home" of the present petitioner, within the meaning *137 of the applicable statutes, was in our opinion in Detroit during the first 11 months of 1954. His principal place of business was there; and it was not in New York City, as he contends. The evidence establishes that petitioner did not work or live in New York City from October 1951 to December 1954; and that, for the year 1954, the only business income which he reported on his return, and the only business deductions which he there claimed, were connected with his employment in Detroit. During the first 8 or 9 months of 1954, he worked for Creditors Service in Detroit, with a view to becoming a partner with the owner of said business; and he conceded, at the trial, that he intended to remain there if the partnership materialized. Also, even after he had terminated his employment with Creditors Service, he printed business stationery and attempted to establish himself in Detroit, as an accountant and industrial engineer. All of these facts indicate that his stay in Detroit was for an indefinite period. Cf. . Since Detroit was petitioner's "home," within the meaning of the applicable statutes, he is not entitled to deduct any of the expenses *138 incurred in Detroit, as "away from home" expenses. And, as regards his expense of $303.03, incurred in traveling between Detroit and New York, this is not deductible as an "away from home" expense, because the evidence establishes that at least part of such expense was not incident to his employment with Creditors Service; and also because petitioner has not established that any part of the same which was incident to such employment was not covered by the expense allowance paid to him by said employer. II. There remains for consideration the second issue of whether, even though petitioner is not entitled to a deduction for "away from home" expenses, he should be allowed a deduction of $1,354.41, for "transportation expenses" incurred in operating his automobile as an employee of Creditors Service. The evidence establishes that at least part of these automobile expenses constituted personal expenditures, incurred during use of his automobile in the evenings and on weekends, and also after his employment with Creditors Service had terminated. Personal expenditures are not deductible. Section 262, 1954 Code. Moreover, as regards any portion of such expenses that may have been incurred *139 in handling business on behalf of Creditors Service, petitioner has not established that the same was not fully covered by the allowance paid to him by said employer. We decide both issues in favor of the respondent. Decision will be entered for the respondent. Footnotes
1. 1954 Code. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For the purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * *
(2) Trade and business deductions of employees. - * * *
(B) Expenses for travel away from home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. (C) Transportation expenses. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *↩